**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ISHMAEL ALOK MOHAMMED,<br><br>  Plaintiff,<br><br>v.<br><br>WELLS FARGO N.A., et al.,<br><br>  Defendants. | CIVIL ACTION NO. 3:15-CV-00403<br><br>(CAPUTO, J.)<br>(MEHALCHICK, M.J.) |

**REPORT AND RECOMMENDATION**

This is a *pro se* action for injunctive relief and damages asserting federal civil rights and state law claims against Defendants Wells Fargo Bank, N.A. and Wells Fargo's CEO John G. Stumpf (collectively, the "Wells Fargo Defendants"), the Honorable Gregory H. Chelak of the Pike County Court of Common Pleas, Pike County Sheriff Philip Bueki, the law firm of Phelan Hallinan, LLP ("PH"), and one of its attorneys, Joseph A. Dessoye (collectively, the "PH Defendants"). (Doc. 1). All Defendants have entered an appearance in this matter and filed motions to dismiss Plaintiff Ishmael Alok Mohammed's complaint. (Doc. 4 (Judge Chelak); Doc. 6 (the PH Defendants); Doc. 10 (the Wells Fargo Defendants); Doc. 20 (Sheriff Bueki)). For the following reasons, it is recommended that all motions be granted.

I. **BACKGROUND**

Mohammed filed his fee-paid complaint in this matter on February 25, 2015.[1] (Doc. 1). Although Mohammed's complaint is not a model of clarity, he appears to assert a federal civil rights claim for the violation of his right to due process under the Fifth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, a common law fraud claim, and a state law tort claim of trespass to chattels.[2] (Doc. 1, at 3).

Mohammed states that he owns real property located at 104 Merlin Road in Greely, Pennsylvania (the "Greely Property"). (Doc. 24, at 4). This litigation stems from a mortgage foreclosure action initiated by Wells Fargo before Judge Chelak in the Pike County Court of Common Pleas, alleging that Mohammed had defaulted on his mortgage agreement regarding the Greely Property. (Doc. 1, at 2-3). Mohammed disputes that he fell behind on his mortgage and claims that the mortgage agreement itself was illegal. (Doc. 1, at 2). The PH Defendants represented Wells Fargo in the foreclosure proceedings before the Court of Common Pleas. (Doc. 24, at 7).

While the state court foreclosure proceeding was pending, Mohammed filed a voluntary petition seeking to discharge his debts through liquidation under Chapter 7 of the

---

[1] Mohammed notes that he also is known as Ishmael Gangoo. (Doc. 1, at 2).

[2] In addition to the limited facts pled in Mohammed's three-page complaint, this Court may "also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). Consideration of these materials does not require conversion of these Rule 12(b) motions to dismiss into Rule 56 motions for summary judgment. *See* Fed. R. Civ. P. 12(d); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Accordingly, the Court takes judicial notice of Mohammed's bankruptcy proceedings in the United States Bankruptcy Court for the Middle District of Pennsylvania. *See In re Ishamel Gangoo*, No. 5:14-BK-01193-JJT (Bankr. M.D. Pa. filed Mar. 18, 2014) (docket sheet attached as Doc. 12-6).

Bankruptcy Code, 11 U.S.C. §§ 701-784, on March 18, 2014. (Doc. 1, at 2); Chapter 7 Voluntary Petition, *In re Ishamel Gangoo*, No. 5:14-BK-01193-JJT, ECF No. 1. Mohammed claims that he exempted the Greely Property from liquidation and disputed Wells Fargo's mortgage debt claim "inside of [his] [b]ankruptcy paperwork . . . ." (Doc. 1, at 2); Chapter 7 Voluntary Petition, *In re Ishamel Gangoo*, No. 5:14-BK-01193-JJT, ECF No. 1, at 13, 19 (including the Greely Property in Schedule C – Property Claimed As Exempt and marking Wells Fargo debt claims as "disputed" on Schedule F – Creditors Holding Unsecured Nonpriority Claims). On September 17, 2014, the bankruptcy court granted Mohammed a discharge of his debts. Discharge of Debtor(s) entered on 9/17/2014, *In re Ishamel Gangoo*, No. 5:14-BK-01193-JJT, ECF No. 33. Mohammed claims this discharge eliminated the Wells Fargo mortgage debt while exempting the Greely Property from liquidation because of the selections he made in his bankruptcy petition. (Doc. 1, at 2-3; Doc. 24, at 5). Furthermore, Mohammed states that Wells Fargo received notice of the bankruptcy proceedings because he listed the bank as a creditor in his bankruptcy petition, yet the bank never challenged or attempted to stay the proceedings. (Doc. 1, at 2); BNC Certificate of Mailing of Discharge (Chapter 7), *In re Ishamel Gangoo*, No. 5:14-BK-01193-JJT, ECF No. 35 (confirming that Wells Fargo was mailed notice of Mohammed's bankruptcy discharge).

Mohammed's bankruptcy petition imposed an automatic stay on the pending state court foreclosure proceeding. 11 U.S.C. § 362(a)(2); *see* (Doc. 12-3, at 4 (revealing no docket entries in Pike County Court of Common Pleas proceeding during pendency of the bankruptcy case)). That automatic stay was lifted when Mohammed received a discharge in his bankruptcy case. 11 U.S.C. § 362(c)(2)(c). Upon the resumption of the foreclosure

action, Mohammed notified all Defendants of the result of his federal bankruptcy proceedings when he appeared before the Court of Common Pleas. (Doc. 1, at 2).

Although Mohammed apparently expected Defendants to abandon the foreclosure action in light of his bankruptcy discharge, the case proceeded and Judge Chelak entered judgment in favor of Wells Fargo. (Doc. 1, at 3; Doc. 24, at 5). Mohammed filed a motion to vacate the foreclosure judgment, arguing that Wells Fargo's continued litigation of the foreclosure action and Judge Chelak's order were both barred by the discharge entered in Mohammed's bankruptcy proceedings. (Doc. 1, at 3; Doc. 24, at 5). It is unclear whether this motion remains pending. In the meantime, Wells Fargo has proceeded on the foreclosure judgment by scheduling a sheriff's sale with the assistance of Sheriff Bueki. (Doc. 24, at 5). In the process of carrying out the sale of the Greely Property, Mohammed alleges that Sheriff Bueki harassed him "by beating on [the] door[,] attempting to serve and threaten eviction[,] and caus[ing] [Mohammed's] children and sick wife grief by attempting to carry out an illegal order from [Judge Chelak]." (Doc. 1, at 3). Mohammed claims that Sheriff Bueki's actions are motivated by a desire to receive "fraudulent financial gain by illegally evicting claimant." (Doc. 1, at 3). These eviction and foreclosure sale efforts form the basis for Mohammed's trespass to chattels claim.

All Defendants have moved to dismiss the complaint and filed briefs in support thereof. (Doc. 4, Doc. 5 (Judge Chelak); Doc. 6, Doc. 8 (the PH Defendants); Doc. 10, Doc. 12 (the Wells Fargo Defendants); Doc. 20, Doc. 21 (Sheriff Bueki)). Mohammed filed an omnibus brief in opposition to the motions to dismiss on September 17, 2015. (Doc. 24). Accordingly, all motions are now ripe for disposition.

4

## II. LEGAL STANDARDS

### A. RULE 12(B)(1) MOTION TO DISMISS STANDARD

A motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *Gould Elecs. Inc. v. United States*, 220 F. 3d 169, 176 (3d Cir. 2000). A defendant asserts a facial challenge "by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 491 (D.N.J. 2008). The Court therefore "must consider the allegations of the complaint as true" in evaluating a facial challenge to subject matter jurisdiction. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In a factual attack under Rule 12(b)(1), however, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. Moreover, in evaluating a factual challenge, a court may consider "evidence outside the pleadings to determine if it has jurisdiction." *Gould Elecs. Inc.*, 220 F.3d at 178. "Rule 12(b)(1) motions may be filed at any time and repeatedly, if the movants assert new arguments warranting [the court's] attention." *Fahnsestock v. Reeder*, 223 F. Supp. 2d 618, 621 (E.D. Pa. 2002). Furthermore, "[w]hen a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd* 39 F.3d 61 (3d Cir. 1994).

### B. RULE 12(B)(6) MOTION TO DISMISS STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P.

12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Additionally, a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court of the United States held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

A document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent

standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

### III. DISCUSSION

#### A. JUDGE CHELAK AND SHERIFF BUEKI ARE ENTITLED TO JUDICIAL IMMUNITY

##### 1. Judge Chelak

Judge Chelak asserts that he is entitled to absolute judicial immunity as a judicial officer of the Pike County Court of Common Pleas. (Doc. 5, at 5). "A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) (per curiam). Judicial immunity applies to claims against judges for both damages and injunctive relief. *See Azubuko*, 443 F.3d at 303–04. Moreover, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1871)); *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("This immunity applies even when the judge is accused of acting maliciously and corruptly . . . ."). Although the Supreme Court has acknowledged that the operation of judicial immunity may at times constitute unfairness to a wronged litigant, "it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Mireles v. Waco*, 502 U.S. 9, 12 (1991) (per curiam) (quoting *Bradley*, 80 U.S. (13 Wall.) at 347).

Mohammed's allegations regarding Judge Chelak relate solely to Judge Chelak's disposition in favor of Wells Fargo in the Pike County Court of Common Pleas foreclosure action. (Doc. 1, at 3). No facts are set forth to show that Judge Chelak's actions were taken in clear absence of all jurisdiction. *See Stump*, 435 U.S. at 356–57; *Azubuko*, 443 F.3d at 303. To the contrary, Pennsylvania law provides that unless exclusive jurisdiction is vested in another court by statute or by rule, "the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings . . . ." 42 Pa. Cons. Stat. § 931(a). This jurisdiction extends to foreclosure actions. *See Beneficial Consumer Disc. Co. v. Vukman*, 77 A.3d 547, 552 (Pa. 2013). Accordingly, all claims against Judge Chelak should be dismissed because he is entitled to absolute judicial immunity.

### 2. Sheriff Bueki

Sheriff Bueki also asserts that he is entitled to judicial immunity with respect to all claims by Mohammed. "[W]here the defendant is directly involved in the judicial process, he may receive immunity in his own right for the performance of a discretionary act or he may be covered by the immunity afforded the judge because he is performing a ministerial function at the direction of the judge." *Waits v. McGowan*, 516 F.2d 203, 206 (3d Cir. 1975); *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir. 1969) ("[A]ny public official acting pursuant to court directive is also immune from suit."). However, judicial immunity does not protect public officials from liability for discretionary actions that are not taken at the direction of the court. *See Snyder v. Fleming*, 102 F. Supp. 2d 592, 596 (M.D. Pa. 2000) (denying summary judgement to sheriff's office defendants who seized plaintiff's property in order to satisfy a judgment but also provided incorrect discretionary advice, stating that plaintiff could post money to secure payment of the judgment and giving false assurances

that the money posted would not be immediately disbursed to the judgment creditor).

The key determination in the case at bar thus is whether Mohammed alleges Sheriff Bueki took discretionary actions outside the scope of his ministerial duties. In his complaint, Mohammed alleges that Sheriff Bueki "harassed [him] by beating on [the] door[,] attempting to serve and threaten eviction[,] and caus[ing] [Mohammed's] children and sick wife grief by attempting to carry out an illegal order from a judge." (Doc. 1, at 3). Mohammed further speculates that Sheriff Bueki was motivated to carry out the eviction by the prospect of "fraudulent financial gain . . . ." (Doc. 1, at 3). However, Sheriff Bueki's subjective motivations are irrelevant to the question of judicial immunity. *Mireles*, 502 U.S. at 11. ("[J]udicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial."). With respect to the actual actions alleged, Mohammed's complaint betrays his claims against Sheriff Bueki by noting that the Sheriff was acting at the direction of the court in "attempting to carry out an illegal order from a judge." (Doc. 1, at 3). In beating on the door, attempting to serve court documents, and carrying out the eviction process, Sheriff Bueki engaged in nondiscretionary acts that were essential to his role in "performing a ministerial function at the direction of the judge." *Waits*, 516 F.2d at 206. Accordingly, it is recommended that all claims against Sheriff Bueki be dismissed on the grounds of judicial immunity because the claims are based on Sheriff Bueki's ministerial role in satisfying the mortgage foreclosure judgment.

    B. MOHAMMED'S § 1983 AND TRESPASS TO CHATTELS CLAIMS ARE BARRED BY THE *ROOKER-FELDMAN* DOCTRINE

The remaining Defendants assert that this Court must dismiss Mohammed's complaint for lack of subject matter jurisdiction pursuant to the *Rooker-Feldmen* doctrine.

(Doc. 8, at 8-10; Doc. 12, at 20-24); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *Parkview Assocs. Partnership v. City of Lebanon,* 225 F.3d 321, 324 (3d Cir. 2000) ("The *Rooker–Feldman* doctrine is based on the statutory foundation of 28 U.S.C. § 1257 and the well-settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision."). The United States Court of Appeals for the Third Circuit applies a four-part test to determine whether review of an action must be excluded under the *Rooker–Feldman* doctrine: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

In regard to the first requirement of the *Rooker-Feldmen* doctrine, this Court finds that Mohammed litigated and lost the Pike County Court of Common Pleas mortgage foreclosure action. In his brief in opposition to Defendants' motions to dismiss, Mohammed makes a one-sentence argument inferring that he did not technically lose in state court because Pennsylvania mortgage foreclosure actions are proceedings *in rem*, and that *Rooker-Feldmen* "requires an *in personam* jurisdictional aspect . . . ." (Doc. 24, at 6); *see New York Guardian Mortg. Corp. v. Dietzel*, 524 A.2d 951, 953 (Pa. Super. Ct. 1987) ("An action in mortgage foreclosure is strictly an *in rem* proceeding, and the purpose of a judgment in mortgage foreclosure is solely to effect a judicial sale of the mortgaged property." (citing *Meco Realty Co. v. Burns,* 200 A.2d 869 (Pa. 1964))). Mohammed provides no case law to

support his assertion, and there appear to be no controlling precedential opinions directly addressing whether an adverse ruling in an *in rem* mortgage foreclosure action constitutes a "loss" for the mortgagor for *Rooker-Feldman* purposes.

    Courts within the Third Circuit consistently hold that the *Rooker-Feldmen* doctrine bars federal plaintiffs from asserting claims based on harms allegedly caused by state court mortgage foreclosure actions. See *Gage v. Wells Fargo Bank, NA*, 521 F. App'x 49, 50-51 (3d Cir. 2013); *Conklin v. Anthou*, 495 F. App'x 257, 261-62 (3d Cir. 2012); *Laychock v. Wells Fargo Home Mortg.*, 399 F. App'x 716, 718 (3d Cir. 2010); *Moncrief v. Chase Manhattan Mortg. Corp.*, 275 F. App'x 149, 152-53 (3d Cir. 2008); *Ayres-Fountain v. E. Sav. Bank,* 153 F. App'x 91, 92 (3d Cir. 2005); *In re Knapper*, 407 F.3d 573, 582 (3d Cir. 2005); *Cuevas v. Wells Fargo Bank, N.A.*, No. CIV.A. 14-6208 ES MA, 2015 WL 5123746, at *4 (D.N.J. Sept. 1, 2015); *Schroeder v. Bank of Am. Corp.*, No. 3:12-CV-589, 2012 WL 6929272, at *6-8 (M.D. Pa. Nov. 19, 2012), *report and recommendation adopted*, No. 3:CV-12-0589, 2013 WL 298058 (M.D. Pa. Jan. 24, 2013); *In re Ogilvie*, 533 B.R. 460, 467 (Bankr. M.D. Pa. 2015); *In re Faust*, 353 B.R. 94, 100 (Bankr. E.D. Pa. 2006). The Court finds persuasive the long line of cases from within this Circuit holding that *Rooker-Feldman* applies to mortgage foreclosure proceedings. *See, e.g., In re Deitch*, 533 B.R. 138, 140-44 (E.D. Pa. 2015) (vacating bankruptcy judge's ruling that mortgage foreclosure action could not have preclusive effect on claims brought in federal court because foreclosure action was an *in rem* proceeding, and remanding with instruction to dismiss for lack of jurisdiction), *appeal docketed*, No. 15-2554 (3d Cir. June 26, 2015). Moreover, Mohammed personally appeared before the Pike County Court of Common Pleas to contest the foreclosure action. (Doc. 1, at 2-3 (stating that Mohammed challenged terms of mortgage agreement and filed motion to vacate Judge Chelak's order));

Pa.R.Civ. P. 1144(a) (providing that mortgagor and real owner of the property shall be named as defendants to a mortgage foreclosure action). Because Mohammed received and availed himself of the opportunity to contest the foreclosure proceedings, it is fair to conclude that Mohammed "lost" in state court. *See Intervest Nat. Bank v. Welch*, No. CIV.A. 10-3119, 2011 WL 1343036, at *6 (E.D. Pa. Apr. 7, 2011) (applying Maryland law) ("By appearing in the action, the mortgagor has the opportunity to contest the issues, including the amount of any deficiency judgment, by filing exceptions. . . . Thus, where a mortgagor personally appears in the foreclosure action, a judgment rendered there has preclusive effect in subsequent litigation."), *aff'd*, 491 F. App'x 322 (3d Cir. 2012). Therefore, the first requirement under *Rooker–Feldman* is satisfied.

The second *Rooker–Feldman* requirement is that the injuries complained of in federal court must have been caused by the state court judgment. *Great W. Mining & Mineral Co.*, 615 F.3d at 166. In analyzing this requirement, the Third Circuit advises that "[a] useful guidepost is the timing of the injury, that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." *Great W. Mining & Mineral Co.*, 615 F.3d at 167. Here, Mohammed clearly complains of the adverse state court mortgage judgment and the sheriff's sale procedure set into motion by Judge Chelak's order. (Doc. 1, at 2 ("Claimant wants the illegal and fraudulent foreclosure actions to stop . . . .")). Mohammed's due process claim under § 1983 and his trespass to chattels tort claim each complain of harm caused by the state court judgment, as both claims rest on the presumption that the judgment was illegal in light of Mohammed's bankruptcy proceedings. (Doc. 1, at 3). However, Mohammed's fraud claim is independent of Judge Chelak's order because the alleged injury is Defendants'

12

conduct in obtaining the foreclosure judgment rather an injury that stemmed from the judgment itself. See *Conklin v. Anthou*, 495 F. App'x 257, 262 (3d Cir. 2012) ("[Plaintiff] is not prevented from otherwise attacking the parties to the foreclosure proceedings or alleging that the methods and evidence employed were the product of fraud or conspiracy, regardless of whether his success on those claims might call the veracity of the state-court judgments into question."); *Gray v. Martinez*, 465 F. App'x 86, 89 n.4 (3d Cir. 2012) ("Were the financial defendants to have engaged in fraud, collusion, or other malfeasance in securing foreclosure, *Rooker–Feldman* would not prevent the exercise of jurisdiction simply because relief would cast doubt on the state-court judgment."). Accordingly, although most of Mohammed's claims complain of injuries caused by the state court judgment, his fraud claim is not barred by *Rooker–Feldman* because it stemmed from conduct that occurred before the judgment was issued.

The third element of *Rooker-Feldmen* requires the state court judgment to have been entered before the federal suit was filed. *Great W. Mining & Mineral Co.*, 615 F.3d at 166. This requirement is clearly satisfied in the case at bar, as Mohammed admits in his complaint that he filed a motion to vacate Judge Chelak's foreclosure order before initiating this action.[3] (Doc. 1, at 3). Specifically, Judge Chelak entered judgment in the foreclosure action on December 23, 2014 (Doc. 12-5, at 2), and Mohammed filed his federal complaint on February 25, 2015 (Doc. 1). The third *Rooker–Feldman* requirement is thus satisfied.

---

[3] The fact that Mohammed's motion to vacate may still be pending is irrelevant to the *Rooker-Feldmen* analysis because the trial court has already entered judgment. *Port Auth. Police Benev. Ass'n. v. Port Auth. of N.Y. & N.J. Police Dep't*, 973 F.2d 169, 178 (3d Cir. 1992).

The fourth and final requirement under *Rooker–Feldman* is that the plaintiff must invite the federal court to review and reject the state court's judgment. *Great W. Mining & Mineral Co.*, 615 F.3d at 166. This requirement is "closely related" although not identical to the second prong of the *Rooker–Feldman* analysis. *Great W. Mining & Mineral Co.*, 615 F.3d at 168. "Prohibited appellate review 'consists of a review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with law.'" *Great W. Mining & Mineral Co.*, 615 F.3d at 169 (quoting *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1143 (10th Cir. 2006)). In his complaint, Mohammed clearly invites this Court to review and overturn the Pike County Court of Common Pleas judgment. (Doc. 1, at 2 ("Claimant wants the illegal and fraudulent foreclosure actions to stop . . . .")). However, while the § 1983 and trespass to chattels claims are necessarily predicated on a finding that Judge Chelak's order was invalid, Mohammed's fraud claim merely undermines the Pike County Court of Common Pleas judgment without requesting to undo that judgment altogether. *See Hersh v. CitiMortgage, Inc.*, 16 F. Supp. 3d 566, 572 (W.D. Pa. 2014) ("[I]f [the district court] determined that Plaintiffs were not in default . . . , the Fayette County Court of Common Pleas decision to permit the foreclosure action to proceed would rest on shaky grounds. But . . . that is no longer dispositive, so long as granting the relief requested would not undo that court's judgment."). Accordingly, the fourth *Rooker–Feldman* requirement is satisfied with respect to Mohammed's § 1983 and trespass to chattels claims, but not with respect to his fraud claim.

It is therefore recommended that the § 1983 and trespass to chattels claims be dismissed for lack of jurisdiction pursuant to *Rooker–Feldman*, but that Mohammed's fraud claim be addressed on its merits.

### C. ALL CLAIMS FAIL ON THE MERITS

Defendants contend that all of Mohammed's claims, including the fraud claim that is not barred on jurisdictional grounds, fail on the merits because Defendants' alleged conduct did not violate the law. (Doc. 8, at 10-11; Doc. 12, at 15-19). This Court agrees with Defendants' contention. Indeed, each claim is predicated on Mohammed's assertion that Defendants acted illegally in continuing to pursue foreclosure and ultimately a sheriff's sale of the Greely Property after Mohammed received a discharge in his bankruptcy proceedings. (Doc. 1, at 2-3). However, Mohammed demonstrates a fundamentally flawed understanding of the bankruptcy laws applicable to this case.

As noted above, the mortgage foreclosure proceeding before the Pike County Court of Common Pleas was brought as an action *in rem*. *See Newtown Vill. P'ship v. Kimmel*, 621 A.2d 1036, 1037 (Pa. Super. Ct. 1993) ("It is well-established that an action in mortgage foreclosure is strictly in rem and thus may not include an in personam action to enforce personal liability."). A discharge under the Bankruptcy Code "voids any judgment at any time obtained, to the extent that such judgment is a determination of the *personal liability* of the debtor with respect to any debt discharged . . . ." 11 U.S.C. § 524(a)(1) (emphasis added). Thus, "a bankruptcy discharge extinguishes only one mode of enforcing a claim-namely, an action against the debtor *in personam*-while leaving intact another-namely, an action against the debtor *in rem.*" *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991). Accordingly, Wells Fargo could lawfully continue to pursue its *in rem* rights through foreclosure after a discharge had been entered in Mohammed's bankruptcy proceeding, even though the discharge extinguished Wells Fargo's potential ability to bring an *in personam* claim for repayment of the promissory note. *See* Chapter 7 Voluntary Petition, *In re Ishamel*

*Gangoo*, No. 5:14-BK-01193-JJT, ECF No. 1, at 19 (listing Wells Fargo promissory note on Schedule F – Creditors Holding Unsecured Nonpriority Claims).

Mohammed's claim that he exempted the Greely Property from liquidation is also unavailing. (Doc. 1, at 2); Chapter 7 Voluntary Petition, *In re Ishamel Gangoo*, No. 5:14-BK-01193-JJT, ECF No. 1, at 13 (including the Greely Property in Schedule C – Property Claimed As Exempt). The Third Circuit has previously described the role of exemption in Chapter 7 bankruptcy proceedings:

> When a party files a Chapter 7 bankruptcy petition, the United States Trustee appoints an impartial case trustee to administer the case and liquidate the debtor's nonexempt assets. The Bankruptcy Code allows the debtor to keep "exempt" property, but a trustee liquidates the debtor's remaining assets, which are now the property of the bankruptcy estate. The Bankruptcy Code specifies the types of property debtors may exempt, as well as the maximum value of the exemptions a debtor may claim in certain assets. Property a debtor claims as exempt will be excluded from the bankruptcy estate unless a party in interest objects.

*In re Messina,* 687 F.3d 74, 79 (3d Cir. 2012) (internal citations omitted).

A debtor may elect to avail himself of the specific exemptions provided under the Bankruptcy Code, or may instead opt to utilize the exemptions provided under the laws of the debtor's home state. 11 U.S.C. § 522(b)(3)(A). Here, Mohammed attempts to claim an exemption of $250,000 for the Greely Property, an amount grossly in excess of the $90,000 that Mohammed lists as the current value of the Greely Property, without specifying any provision of Pennsylvania law or the Bankruptcy Code that could possibly justify his exemption. Chapter 7 Voluntary Petition, *In re Ishamel Gangoo*, No. 5:14-BK-01193-JJT, ECF No. 1, at 13 (Schedule C – Property Claimed As Exempt). Even if there is no valid basis to Mohammed's claimed exemption, Mohammed believes he successfully excluded the Greely Property from the bankruptcy estate because Defendants (and the bankruptcy

trustee) failed to object to the exemption. (Doc. 1, at 2); *see Schwab v. Reilly*, 560 U.S. 770, 775-76 (2010) ("If an interested party fails to object within the time allowed, a claimed exemption will exclude the subject property from the estate even if the exemption's value exceeds what the Code permits."); *Taylor v. Freeland & Kronz*, 938 F.2d 420, 423 (3d Cir. 1991) ("No provision of the Code provides that the failure to object is excused when the debtor's exemption claim is not advanced 'in good faith,' nor is there an exception provided for situations where a claimed exemption has only a questionable basis in section 522(b)."), *aff'd*, 503 U.S. 638 (1992).

  This Court need not determine whether Mohammed exempted the Greely Property from the bankruptcy estate, however, because exemption alone does not impact Wells Fargo's ability as a secured creditor to pursue its *in rem* mortgage foreclosure action on the Greely Property. Section 522(c)(2)(A)(i) provides that creditors with secured liens on a property may continue to pursue a debt that is not avoided under the Bankruptcy Code. A debtor seeking to avoid a lien must file a motion in accordance with Rule 9014 of the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr. P. 4003. A motion filed pursuant to Rule 9014 requires that "reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought [(*i.e.* the lienholder)]." Fed. R. Bankr. P. 9014. A review of the docket of Mohammed's bankruptcy proceedings reveals that no motion was filed pursuant to Rule 9014 seeking to avoid Wells Fargo's mortgage lien against the Greely Property. *In re Ishamel Gangoo*, No. 5:14-BK-01193-JJT (Doc. 12-6). This Court thus concludes that Wells Fargo's mortgage was not avoided. Because the mortgage was not avoided during Mohammed's bankruptcy proceedings, Wells Fargo was free to continue with its *in rem* foreclosure action against the Greely Property once the automatic stay was

lifted. *See* 11 U.S.C. § 522(c)(2)(A(i). Accordingly, Mohammed's claimed exemption with respect to the Greely Property had no effect on the status of Wells Fargo's *in rem* mortgage lien. Because Wells Fargo acted legally in continuing to pursue its foreclosure action against the Greely Property after the automatic stay was lifted, those actions cannot form the basis of a valid claim. *See In re Morales*, No. 12-00886, 2015 WL 3825981, at *5 (Bankr. D.P.R. June 18, 2015) ("In the present case, Plaintiffs took no affirmative action to avoid Defendant's lien on the Real Property. Therefore, Defendant's lien remained enforceable against the Real Property even after the Plaintiffs' personal liability had been discharged."). As such, it is recommended that Mohammed's complaint be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as Defendants' alleged conduct did not violate the law.

### IV. LEAVE TO AMEND

The Third Circuit has instructed that district courts generally must permit a curative amendment if a complaint filed *pro se* is vulnerable to dismissal for failure to state a claim, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). In this case, it would be futile to allow Mohammed to amend his complaint because all Defendants acted legally. Moreover, this Court lacks jurisdiction to review the majority of Mohammed's claims. Dismissal without leave to amend is therefore recommended.

V. **RECOMMENDATION**

Based on the foregoing, it is recommended that:

1. All of the Defendants' motions to dismiss (Doc. 4; Doc. 6; Doc. 10; Doc. 20) be **GRANTED**;

2. Mohammed's complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6);

3. Leave to amend be **DENIED**; and

4. The Clerk of Court be directed to **CLOSE** this case.

BY THE COURT:

Dated: January 11, 2016

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ISHMAEL ALOK MOHAMMED,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>WELLS FARGO N.A., et al.,<br><br>　　　　　Defendants. | CIVIL ACTION NO. 3:15-CV-00403<br><br>(CAPUTO, J.)<br>(MEHALCHICK, M.J.) |

### NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **January 11, 2016**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: **January 11, 2016**　　　　　　　　　　　　*s/ Karoline Mehalchick*
　　　　　　　　　　　　　　　　　　　　　　　　**KAROLINE MEHALCHICK**
　　　　　　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**